**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| JAMES NALDER, Guardian Ad Litem for minor Cheyanne Nalder, real party in interest, and GARY LEWIS, Individually; <br><br>     Plaintiffs, <br><br> vs. <br><br> UNITED AUTOMOBILE INSURANCE COMPANY, DOES I through V, and ROE CORPORATIONS I through V, inclusive <br><br>     Defendants. | 2:09-cv-1348-ECR-GWF <br><br><br> **Order** |

Plaintiffs in this automobile insurance case allege breach of contract, breach of the implied covenant of good faith and fair dealing, bad faith, breach of Nev. Rev. Stat. § 686A.310, and fraud. Now pending is Defendant's "motion for summary judgment on all claims; alternatively, motion for summary judgment on extra-contractual remedies; or, further in the alternative, motion stay [sic] discovery and bifurcate claims for extra-contractual remedies; finally, in the alternative, motion for leave to amend" ("MSJ") (#17).

The motion is ripe, and we now rule on it.

**I. Background**

Plaintiff Gary Lewis ("Lewis") is a resident of Clark County, Nevada. (Compl. ¶ 2 (#1).) Plaintiff James Nalder ("Nalder"), Guardian ad Litem for minor Cheyanne Nalder, is a resident of Clark County, Nevada. (Id. at ¶ 1.) Defendant United Automobile Insurance Co. ("UAIC") is an automobile insurance company duly authorized to act as an insurer to the State of Nevada and doing business in Clark County, Nevada. (Id. at ¶ 3.) Defendant is incorporated in the State of Florida with its principal place of business in the State of Florida. (Pet. for Removal ¶ VII (#1).)

Lewis was the owner of a 1996 Chevy Silverado insured, at various times, by Defendant. (Compl. at ¶ 5-6 (#1).) Lewis had an insurance policy issued by UAIC on his vehicle during the period of May 31, 2007 to June 30, 2007. (MSJ at 3 (#17).) Lewis received a renewal statement, dated June 11, 2007, instructing him to remit payment by the due date of June 30, 2007 in order to renew his insurance policy. (Id. at 3-4.) The renewal statement specified that "[t]o avoid lapse in coverage, payment must be received prior to expiration of your policy." (Pls.' Opp. at 3 (#20).) The renewal statement listed June 30, 2007 as effective date, and July 31, 2007 as an "expiration date." (Id.) The renewal statement also states that the "due date" of the payment is June 30, 2007, and repeats that the renewal amount is due no later than June 30, 2007. (MSJ at 7-8 (#17).) Lewis made a payment on July 10, 2007. (Id.)

Defendant then issued a renewal policy declaration and automobile insurance cards indicating that Lewis was covered under

an insurance policy between July 10, 2007 to August 10, 2007.  (Pls'
Opp. Exhibit 1 at 35-36; MSJ at 4.)

On July 8, 2007, Lewis was involved in an automobile accident
in Pioche[1], Nevada, that injured Cheyanne Nalder.  (MSJ at 3 (#17).)
Cheyanne Nalder made a claim to Defendant for damages under the
terms of Lewis's insurance policy with UAIC.  (Compl. at ¶ 9 (#1).)
Defendant refused coverage for the accident that occurred on July 8,
2007, claiming that Lewis did not have coverage at the time of the
accident.  (Id. at ¶ 10.)  On October 9, 2007, Plaintiff Nalder, as
guardian of Cheyanne Nalder, filed suit in Clark County District
Court under suit number A549111 against Lewis.  (Mot. to Compel at 3
(#12).)  On June 2, 2008, the court in that case entered a default
judgment against Lewis for $3.5 million.  (Id.)

Plaintiffs then filed their complaint in this action in Nevada
state court on March 22, 2009 against Defendant UAIC.  On July 24,
2009, Defendant removed the action to federal court, invoking our
diversity jurisdiction.  (Petition for Removal (#1).)

On March 18, 2010, Defendant filed the MSJ (#17).  On April 9,
2010, Plaintiffs opposed (#20), and on April 26, 2010, Defendant
replied (#21).  We granted leave for Plaintiffs to file a supplement
(#26), and Defendant filed a supplement (#33) to its reply (#21).

---

[1] Plaintiffs' complaint originally alleged that the accident
occurred in Clark County, Nevada.  It is unclear from the documents
which site is the correct one, but neither party disputes jurisdiction
and the actual location of the accident is irrelevant to the
disposition of this motion.

3

## II. Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists. N.W. Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994). The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir. 1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. Fed. R. Civ. P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 116 S.Ct. 1261 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form — namely, depositions, admissions, interrogatory answers, and affidavits — only evidence which might be admissible at trial may be considered

1  by a trial court in ruling on a motion for summary judgment.  FED.

2  R. CIV. P. 56(c); Beyene v. Coleman Sec. Servs., Inc., 854 F.2d

3  1179, 1181 (9th Cir. 1988).

4      In deciding whether to grant summary judgment, a court must

5  take three necessary steps: (1) it must determine whether a fact is

6  material; (2) it must determine whether there exists a genuine issue

7  for the trier of fact, as determined by the documents submitted to

8  the court; and (3) it must consider that evidence in light of the

9  appropriate standard of proof.  Anderson, 477 U.S. at 248.  Summary

10  judgment is not proper if material factual issues exist for trial.

11  B.C. v. Plumas Unified Sch. Dist., 192 F.3d 1260, 1264 (9th Cir.

12  1999).  "As to materiality, only disputes over facts that might

13  affect the outcome of the suit under the governing law will properly

14  preclude the entry of summary judgment."  Anderson, 477 U.S. at 248.

15  Disputes over irrelevant or unnecessary facts should not be

16  considered.  Id.  Where there is a complete failure of proof on an

17  essential element of the nonmoving party's case, all other facts

18  become immaterial, and the moving party is entitled to judgment as a

19  matter of law.  Celotex, 477 U.S. at 323.  Summary judgment is not a

20  disfavored procedural shortcut, but rather an integral part of the

21  federal rules as a whole.  Id.

22

23                    **III. Analysis**

24      Defendant seeks summary judgment on all claims on the basis

25  that Lewis had no insurance coverage on the date of the accident.

26  Plaintiff contends that Lewis was covered on the date of the

27  accident because the renewal notice was ambiguous as to when payment

28                                  5

1    must be received in order to avoid a lapse in coverage, and any

2    ambiguities must be construed in favor of the insured.  Defendants

3    request, in the alternative, that we dismiss Plaintiffs' extra-

4    contractual claims, or bifurcate the claim of breach of contract

5    from the remaining claims.  Finally, if we deny all other requests,

6    Defendant requests that we grant leave to amend

7        A. Contract Interpretation Standard

8        In diversity actions, federal courts apply substantive state

9    law.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Nitco

10   Holding Corp. v. Boujikian, 491 F.3d 1086, 1089 (9th Cir. 2007).

11   Under Nevada law, "[a]n insurance policy is a contract that must be

12   enforced according to its terms to accomplish the intent of the

13   parties."  Farmers Ins. Exch. v. Neal, 64 P.3d 472, 473 (Nev. 2003).

14   When the facts are not in dispute, contract interpretation is a

15   question of law.  Grand Hotel Gift Shop v. Granite State Ins. Co.,

16   839 P.2d 599, 602 (Nev. 1992).  The language of the insurance policy

17   must be viewed "from the perspective of one not trained in law," and

18   we must "give plain and ordinary meaning to the terms."  Farmers

19   Ins. Exch., 64 P.3d at 473 (internal quotation marks omitted).

20   "Unambiguous provisions will not be rewritten; however, ambiguities

21   are to be resolved in favor of the insured."  Id. (footnote

22   omitted); see also Fed. Ins. Co. v. Am. Hardware Mut. Ins. Co., 184

23   P.3d 390, 392 (Nev. 2008) ("In the insurance context, we broadly

24   interpret clauses providing coverage, to afford the insured the

25   greatest possible coverage; correspondingly, clauses excluding

26   coverage are interpreted narrowly against the insurer.") (internal

27   quotation marks omitted); Capitol Indemnity Corp. v. Wright, 341 F.

28

                                    6

1  Supp. 2d 1152, 1156 (D. Nev. 2004) (noting that "a Nevada court will

2  not increase an obligation to the insured where such was

3  intentionally and unambiguously limited by the parties").  "When a

4  contract is unambiguous and neither party is entitled to relief from

5  the contract, summary judgment based on the contractual language is

6  proper."  Allstate Ins. Co. v. Fackett, 206 P.3d 572, 575 (Nev.

7  2009) (citing Chwialkowski v. Sachs, 834 P.2d 405, 406 (Nev. 1992)).

8      B. Plaintiff Lewis' Insurance Coverage on July 8, 2007

9      Plaintiffs contend that Lewis was covered under an insurance

10 policy on July 8, 2007, the date of the accident, because Lewis'

11 payment on July 10, 2007 was timely.  Plaintiffs rely on the

12 sentence "[t]o avoid lapse in coverage, payment must be received

13 prior to expiration of your policy" contained in the renewal

14 statement.  Defendant contends that "expiration of your policy" did

15 not refer to the expiration date of the renewal policy listed on the

16 renewal statement, but to the expiration of Lewis' current policy,

17 which coincided with the listed due date on the renewal statement.

18 Plaintiffs contend that Lewis reasonably believed that while there

19 was a due date on which UAIC preferred to receive payment, there was

20 also a grace period within which Lewis could pay and avoid any lapse

21 in coverage.

22     The renewal statement cannot be considered without considering

23 the entirety of the contract between Lewis and UAIC.  Plaintiff

24 attached exhibits of renewal statements, policy declarations pages,

25 and Nevada automobile insurance cards issued by UAIC for Lewis.  The

26 contract, taken as a whole, cannot reasonably be interpreted in

27 favor of Plaintiffs' argument.

28

7

Lewis received a "Renewal Policy Declarations" stating that he had coverage from May 31, 2007 to June 30, 2007 at 12:01 A.M. (Pls' Opp., Exhibit A at 29 (#20-1); Pls' Supp., Exhibit A at 11-12 (#26-1); Pls' Supp., Exhibit A at 15 (#26-1).) The declarations page stated that "[t]his declaration page with 'policy provisions' and all other applicable endorsements complete your policy." (Pls' Opp., Exhibit A at 29 (#20-1).) Lewis also received a Nevada Automobile Insurance Card issued by UAIC stating that the effective date of his policy was May 31, 2007, and the expiration date was June 30, 2007. (Id. at 30; Pls' Supp., Exhibit A at 11-12 (#26-1).) The renewal statement Lewis received in June must be read in light of the rest of the insurance policy, contained in the declarations page and also summarized in the insurance card.

"In interpreting a contract, 'the court shall effectuate the intent of the parties, which may be determined in light of the surrounding circumstances if not clear from the contract itself.'" Anvui, LLC v. G.L. Dragon, LLC, 163 P.3d 405, 407 (Nev. 2007). Plaintiffs contend that there was a course of dealing between Lewis and UAIC supporting a reasonable understanding that there was a grace period involved in paying the insurance premium for each month-long policy. In fact, the so-called course of dealing tilts, if at all, in favor of Defendant. Lewis habitually made payments that were late. UAIC never retroactively covered Lewis on such occasions. Lewis' new policy, clearly denoted on the declarations page and insurance cards Lewis was issued, would always become effective on the date of the payment.

8

1    Plaintiffs point to the fact that in April 2007, Lewis was
2 issued a revised renewal statement stating that the renewal amount
3 was due on May 6, 2007, a date after the effective date of the
4 policy Lewis would be renewing through the renewal amount.  This
5 isolated occasion occurred due to the fact that Lewis added a driver
6 to his insurance policy, resulting in an increase in the renewal
7 amount, after UAIC had previously sent a renewal notice indicating
8 that a lower renewal amount was due on April 29, 2007.  UAIC issued
9 a revised renewal statement dated April 26, 2007, and gave Lewis an
10 opportunity to pay by May 6, 2007, instead of April 29, 2007, when
11 the original renewal amount had been due upon expiration of his
12 April policy.  In that case, Lewis made a timely payment on April
13 28, 2007, and therefore there is not a single incident Plaintiffs
14 can point to in which Lewis was retroactively covered for a policy
15 before payment was made, even in the single instance UAIC granted
16 him such an opportunity due to a unique set of circumstances.

17    C. Statutory Arguments

18    Plaintiffs' arguments that Lewis had coverage due to Nev. Rev.
19 Stat. § 687B.320 and § 687B.340 are untenable.  Section 687B.320
20 applies in the case of midterm cancellations, providing that:

21         1. Except as otherwise provided in subsection 3, no
22         insurance policy that has been in effect for at least 70
23         days or that has been renewed may be cancelled by the
24         insurer before the expiration of the agreed term or 1 year
25         from the effective date of the policy or renewal,
26         whichever occurs first, except on any one of the following
27         grounds:

28
9

(a) Failure to pay a premium when due;

. . .

2. No cancellation under subsection 1 is effective until in the case of paragraph (a) of subsection 1 at least 10 days and in the case of any other paragraph of subsection 1 at least 30 days after the notice is delivered or mailed to the policyholder.

The policies at issue in this case were month-long policies with options to renew after the expiration of each policy. Lewis' June policy expired on June 30, 2007, according to its terms. There was no midterm cancellation and Nev. Rev. Stat. § 687B.320 simply does not apply. Plaintiffs' arguments that between terms is equivalent to "midterm" simply defies the statutory language and the common definition of midterm. In a Ninth Circuit case interpreting Montana law, the Ninth Circuit noted that the district court's observation that "the policy expired by its own terms; it was not cancelled" was proper, and the Montana statute at issue in the case, similar to the Nevada statute here, "appl[ies] only to cancellation of a policy, not to its termination." State Farm Mut. Auto. Ins. Co. v. White, 563 F.2d 971, 974 (9th Cir. 1977). The Ninth Circuit went on to note that situations in which "the policy terminated by its own terms for failure of the insured to renew" is controlled by a different statute, which "does not require any notice to the policy-holder when the reason for the non-renewal of the policy is the holder's failure to pay the renewal premiums." Id.

Nev. Rev. Stat. § 687B.340 provides:

1. Subject to subsection 2, a policyholder has a right to
have his or her policy renewed, on the terms then being
applied by the insurer to persons, similarly situated, for
an additional period equivalent to the expiring term if the
agreed term is 1 year or less, or for 1 year if the agreed
term is longer than 1 year, unless:

. . .

(b) At least 30 days for all other policies,
before the date of expiration provided in the policy the
insurer mails or delivers to the policyholder a notice of
intention not to renew the policy beyond the agreed
expiration date.  If an insurer fails to provide a timely
notice of nonrenewal, the insurer shall provide the insured
with a policy of insurance on the identical terms as in the
expiring policy.

Plaintiffs argues that Nev. Rev. Stat. § 687B.340 indicates how
favorable the law is to the insured, and that there is no mention in
the statute that payment is a prerequisite to a policyholder's
"right to have his or her policy renewed."  It is true that the
Nevada statute does not include a provision similar to the one in
the Montana statute providing that the section does not apply when
the insured has "failed to discharge when due any of his obligations
in connection with the payment of premiums for the policy, or the
renewal therefor . . . ."  White, 563 F.2d at 974 n.3.  The Montana
statute also stated that the section does not apply "[i]f the
insurer has manifested its willingness to renew."  Id.

11

1   Plaintiffs, however, fail to give credit to the entirety of the
2   Nevada statute.  The statute does not say that the policyholder's
3   policy must be renewed, it says that the insurer shall provide the
4   insured with a policy on "the identical terms as in the expiring
5   policy."  One of the terms of the expiring policy was payment of the
6   renewal amount.  UAIC did provide Lewis, the policyholder, with a
7   renewal statement indicating that UAIC would renew the insurance
8   policy as long as all the terms of the previous policy were met,
9   i.e., payment.

10      Defendant correctly points out that this statute does not fit
11  the circumstances of this case.  Lewis' policy was not renewed not
12  because UAIC had an intention not to renew, but because Lewis failed
13  to carry out his end of the contract, that is, to pay a renewal
14  amount.  Lewis' policy was renewed on the date payment was received,
15  but this date was after the date of the accident.  Plaintiffs'
16  statutory arguments, therefore, do not pass muster.

17

18                          **IV. Conclusion**

19      Defendant's motion for summary judgment on all claims shall be
20  granted because Lewis had no insurance coverage on the date of the
21  accident.  The renewal statement was not ambiguous in light of the
22  entire contract and history between Lewis and UAIC.  The term
23  "expiration of your policy" referred to the expiration of Lewis'
24  current policy, and Lewis was never issued retroactive coverage when
25  his payments were late.  His renewal policy would always begin on
26  the date payment was received.  We cannot find that Lewis was
27  covered between the expiration of his policy in June and payment for

28                              12

his next policy without straining to find an ambiguity where none exists, and creating an obligation on the part of insurance companies that would be untenable, i.e., to provide coverage when the insured has not upheld his own obligations under the contract to submit a payment.

The statutes cited by Plaintiffs simply do not apply.  The expiration of Lewis' policy was not a midterm cancellation, and UAIC was not obligated to provide an insurance policy despite Lewis' failure to adhere to the terms of that policy.

Defendant's other requests are moot in light of our decision granting summary judgment.

**IT IS, THEREFORE, HEREBY ORDERED** that Defendant's motion for summary judgment on all claims (#17) is **GRANTED** with respect to all of Plaintiffs' claims.

The Clerk shall enter judgment accordingly.

DATED: December 17, 2010.

Edward C. Reed.
_____
UNITED STATES DISTRICT JUDGE

13