1

2

3

4

5

6                            **UNITED STATES DISTRICT COURT**

7                                **DISTRICT OF NEVADA**

8   JAMES NALDER, Guardian Ad Litem for         )
    minor Cheyanne Nalder, real party in        )
9   interest, and GARY LEWIS, Individually,     )
                                                )
10              Plaintiffs,                      )            2:09-cv-1348-RCJ-GWF
                                                )
11       v.                                      )            **ORDER**
                                                )
12  UNITED AUTOMOBILE INSURANCE                  )
    COMPANY, DOES I through V, and ROE           )
13  CORPORATIONS I through V, inclusive,         )
                                                )
14              Defendants.                      )
                                                )
15  _____ )

16          Currently before the Court are a Motion for Summary Judgment (#88) and a Counter-

17  Motion for Summary Judgment (#89).  This case, originally ruled upon by the Honorable

18  Edward C. Reed, is on partial remand from the U.S. Court of Appeals for the Ninth Circuit.

19  The Court heard oral argument on October 22, 2013.

20                                    **BACKGROUND**

21          In July 2009, Defendant United Automobile Insurance Company ("UAIC") filed a petition

22  for removal based on diversity jurisdiction.  (Pet. for Removal (#1) at 1-2).  Defendant attached

23  Plaintiffs James Nalder, guardian ad litem for minor Cheyanne Nalder, real party in interest,

24  and Gary Lewis's (collectively "Plaintiffs") complaint which had been filed in the Eighth Judicial

25  District in Clark County, Nevada.  (Compl. (#1) at 5-16).

26          The complaint alleged the following.  (*Id.* at 5).  Lewis was the owner of a 1996 Chevy

27  Silverado and had an automobile insurance policy with Defendant on July 8, 2007.  (*Id.* at 6).

28  On July 8, 2007, Lewis drove over top of Cheyanne while Cheyanne was a pedestrian in a

    residential area and caused Cheyanne serious personal injuries.  (*Id.* at 7).  Cheyanne made

a claim to Defendant for damages and offered to settle the claim for personal injuries and damages against Lewis within the policy limits. (*Id.*). Defendant refused to settle and denied the claim all together indicating that Lewis did not have coverage at the time of the accident. (*Id.*). Defendant was required to provide insurance coverage under the policy. (*Id.* at 9). Defendant never informed Lewis that Cheyanne was willing to settle the claim for the sum of $15,000, the policy limit. (*Id.*). Due to the dilatory tactics and failure of Defendant to protect its insured, Cheyanne filed a complaint on October 9, 2007 against Lewis for her personal injuries and damages. (*Id.*). Cheyanne procured a default judgment in the amount of $3,500,000 against Lewis. (*Id.*). Plaintiffs alleged breach of contract, breach of the implied covenant of good faith and fair dealing, bad faith, breach of Nev. Rev. Stat. § 686A.310, and fraud against Defendant. (*Id.* at 9-14).

In March 2010, Defendant filed a motion for summary judgment on all claims. (*See* Mot. for Summ. J. (#17)). In December 2010, Judge Reed issued an order granting Defendant's motion for summary judgment on all claims and directed the Clerk of the Court to enter judgment accordingly. (Order (#42) at 13). The order provided the following factual history:

> Lewis was the owner of a 1996 Chevy Silverado insured, at various times, by Defendant. Lewis had an insurance policy issued by UAIC on his vehicle during the period of May 31, 2007 to June 30, 2007. Lewis received a renewal statement, dated June 11, 2007, instructing him to remit payment by the due date of June 30, 2007 in order to renew his insurance policy. The renewal statement specified that "[t]o avoid lapse in coverage, payment must be received prior to expiration of your policy." The renewal statement listed June 30, 2007 as effective date, and July 31, 2007 as an "expiration date." The renewal statement also states that the "due date" of the payment is June 30, 2007, and repeats that the renewal amount is due no later than June 30, 2007. Lewis made a payment on July 10, 2007.

> Defendant then issued a renewal policy declaration and automobile insurance cards indicating that Lewis was covered under an insurance policy between July 10, 2007 to August 10, 2007.

(*Id.* at 2-3).[1]

The order stated the following. (*Id.* at 5). Defendant sought summary judgment on all

---

[1]   Record citations omitted.

1    claims on the basis that Lewis had no insurance coverage on the date of the accident.  (*Id.*).

2    Plaintiffs argued that Lewis was covered on the date of the accident because the renewal

3    notice was ambiguous as to when payment had to be received in order to avoid a lapse in

4    coverage and that any ambiguities had to be construed in favor of the insured.  (*Id.* at 5-6).

5    Defendants, in the alternative, requested that the Court dismiss Plaintiffs' extra-contractual

6    claims or bifurcate the claim of breach of contract from the remaining claims.  (*Id.* at 6).

7        The order stated the following regarding Lewis's insurance coverage on July 8, 2007:

8            Plaintiffs contend that Lewis was covered under an insurance policy on
     July 8, 2007, the date of the accident, because Lewis' payment on July 10, 2007
9    was timely. Plaintiffs rely on the sentence "[t]o avoid lapse in coverage, payment
     must be received prior to expiration of your policy" contained in the renewal
10   statement.  Defendant contends that "expiration of your policy" did not refer to
     the expiration date of the renewal policy listed on the renewal statement, but to
11   the expiration of Lewis' current policy, which coincided with the listed due date
     on the renewal statement.  Plaintiffs contend that Lewis reasonably believed that
12   while there was a due date on which UAIC preferred to receive payment, there
     was also a grace period within which Lewis could pay and avoid any lapse in
13   coverage.
             The renewal statement cannot be considered without considering the
14   entirety of the contract between Lewis and UAIC. Plaintiff attached copies of
     renewal statements, policy declarations pages, and Nevada automobile
15   insurance cards issued by UAIC for Lewis.  The contract, taken as a whole,
     cannot be reasonably be interpreted in favor of Plaintiffs' argument.
16           Lewis received a "Renewal Policy Declarations" stating that he had
     coverage from May 31, 2007 to June 30, 2007 at 12:01 A.M. (Pls' Opp., Exhibit
17   A at 29 (#20-1); Pls' Supp., Exhibit A at 11-12 (#26-1); Pls' Supp., Exhibit A at
     15 (#26-1).)  The declarations page stated that "[t]his declaration page with
18   'policy provisions' and all other applicable endorsements complete your policy."
     (Pls' Opp., Exhibit A at 29 (#20-1).) Lewis also received a Nevada Automobile
19   Insurance Card issued by UAIC stating that the effective date of his policy was
     May 31, 2007, and the expiration date was June 30, 2007. (Id. at 30; Pls' Supp.,
20   Exhibit A at 11-12 (#26-1).)  The renewal statement Lewis received in June must
     be read in light of the rest of the insurance policy, contained in the declarations
21   page and also summarized in the insurance card.
             "In interpreting a contract, 'the court shall effectuate the intent of the
22   parties, which may be determined in light of the surrounding circumstances if not
     clear from the contract itself.'"  *Anvui, LLC v. G.L. Dragon, LLC*, 163 P.3d 405,
23   407 (Nev. 2007).  Plaintiffs contend that there was a course of dealing between
     Lewis and UAIC supporting a reasonable understanding that there was a grace
24   period involved in paying the insurance premium for each month-long policy. In
     fact, the so-called course of dealing tilts, if at all, in favor of Defendant. Lewis
25   habitually made payments that were late. UAIC never retroactively covered
     Lewis on such occasions. Lewis' new policy, clearly denoted on the declarations
26   page and insurance cards Lewis was issued, would always become effective on
     the date of the payment.
27           Plaintiffs point to the fact that in April 2007, Lewis was issued a revised
     renewal statement stating that the renewal amount was due on May 6, 2007, a
28   date after the effective date of the policy Lewis would be renewing through the

                                                 3

1
2
3
4
5
6

renewal amount. This isolated occasion occurred due to the fact that Lewis added a driver to his insurance policy, resulting in an increase in the renewal amount, after UAIC had previously sent a renewal notice indicating that a lower renewal amount was due on April 29, 2007. UAIC issued a revised renewal statement dated April 26, 2007, and gave Lewis an opportunity to pay by May 6, 2007, instead of April 29, 2007, when the original renewal amount had been due upon expiration of his April policy. In that case, Lewis made a timely payment on April 28, 2007, and therefore there is not a single incident Plaintiffs can point to in which Lewis was retroactively covered for a policy before payment was made, even in the single instance UAIC granted him such an opportunity due to a unique set of circumstances.

7    (*Id.* at 7-9).

8    Plaintiffs appealed.  (Notice of Appeal (#46)).  In a two-page memorandum disposition,

9    the Ninth Circuit held, *inter alia*, the following:

10
11
12
13
14
15

We reverse the district court's grant of United Automobile Insurance Company's motion for summary judgment with respect to whether there was coverage by virtue of the way the renewal statement was worded. Plaintiffs came forward with facts supporting their tenable legal position that a reasonable person could have interpreted the renewal statement to mean that Lewis's premium was due by June 30, 2007, but that the policy would not lapse if his premium were "received prior to expiration of [his] policy," with the "expiration date" specifically stated to be July 31, 2007.  We remand to the district court for trial or other proceedings consistent with this memorandum. The portion of the order granting summary judgment with respect to the statutory arguments is affirmed.

16    (Ninth Cir. Mem. Dispo. (#82) at 2-3).

17    The pending motions now follow.

18    **LEGAL STANDARD**

19    In reviewing a motion for summary judgment, the court construes the evidence in the

20    light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.

21    1996).  Pursuant to Fed.R.Civ.P. 56, a court will grant summary judgment "if the movant shows

22    that there is no genuine dispute as to any material fact and the movant is entitled to judgment

23    as a matter of law."  Fed.R.Civ.P. 56(a).  Material facts are "facts that might affect the outcome

24    of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106

25    S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  A material fact is "genuine" if the evidence is such

26    that a reasonable jury could return a verdict for the nonmoving party.  *Id.*

27    The moving party bears the initial burden of identifying the portions of the pleadings and

28    evidence that the party believes to demonstrate the absence of any genuine issue of material

4

fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A)-(B). Once the moving party has properly supported the motion, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.  The nonmoving party cannot defeat a motion for summary judgment "by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

## DISCUSSION

**I.    Plaintiff James Nalder's Motion for Summary Judgment (#88)**

Nalder moves for partial summary judgment as to liability against Defendant.  (Mot. for Summ. J. (#88) at 1).  Nalder makes three arguments which will be addressed in turn.

### A.    Ambiguous Contract

Nalder argues that because the renewal statement was ambiguous it must be strictly construed against the insurance company pursuant to Nevada law and, thus, Lewis had coverage at the time of the accident.  (Mot. for Summ. J. (#88) at 10).

In response, Defendant argues that Lewis's renewal statement is not ambiguous and clearly demanded remittance of the policy premium for the subsequent term by the expiration

1  of the present policy period.  (Opp'n to Mot. for Summ. J. (#90) at 15).  Defendant argues that
2  a material issue of fact remains over whether the renewals were ambiguous.  (*Id.*).

3          Nalder filed a reply.  (Reply to Mot. for Summ. J. (#95)).

4          "Summary judgment is appropriate in contract cases only if the contract provision or the
5  contract in question is unambiguous."  *Econ. Forms Corp. v. Law Co., Inc.*, 593 F.Supp. 539,
6  540 (D. Nev. 1984).  A contract is ambiguous if it is reasonably susceptible to more than one
7  interpretation.  *Shelton v. Shelton*, 78 P.3d 507, 510 (Nev. 2003).  Whether a contract is
8  ambiguous is a question of law.  *Margrave v. Dermody Properties, Inc.*, 878 P.2d 291, 293
9  (Nev. 1994).  "The interpretation of an ambiguous contract is a mixed question of fact and
10 law."  *Econ. Forms Corp.*, 593 F.Supp. at 541.  However, in Nevada, "any ambiguity or
11 uncertainty in an insurance policy must be construed against the insurer and in favor of the
12 insured."  *United Nat'l Ins. Co. v. Frontier Ins. Co., Inc.*, 99 P.3d 1153, 1156 (Nev. 2004).

13         In this case, the Court finds that the renewal statement is ambiguous based on the
14 Ninth Circuit's reverse and remand.  The Court finds that the renewal statement is reasonably
15 susceptible to more than one interpretation as demonstrated by both Judge Reed and the
16 Ninth Circuit's conflicting interpretations.  As such, the Court finds that, pursuant to Nevada
17 law, this ambiguity is construed against Defendant and in favor of the insured such that Lewis
18 was covered by the insurance policy on the date of the accident.  The Court grants summary
19 judgment on this issue in favor of Plaintiffs.

20     **B.    Bad Faith**

21         Nalder argues that Defendant's actions constitute bad faith.  (Mot. for Summ. J. (#88)
22 at 19).  Specifically, Nalder argues that Lewis properly renewed his policy pursuant to the
23 policy's renewal statements, Defendant renewed Lewis's policy, and then Defendant claimed
24 that there was a lapse in coverage.  (*Id.*).  Nalder asserts that Defendant never investigated
25 to determine whether Lewis was covered, made a snap decision that there was no coverage,
26 and left Lewis bereft of protection against Cheyanne's lawsuit.  (*Id.*).  Nalder contends that
27 these facts constitute bad faith which requires Defendant to compensate Lewis, pay for the
28 judgment currently entered against him, and pay for compensatory and punitive damages.

6

1    (*Id.*).

2         In response, Defendant argues that every case cited by Nalder involves a situation

3    where there existed a policy in force at the time of the loss.  (Opp'n to Mot. for Summ. J. (#90)

4    at 21).  Defendant asserts that, in this case, Nalder asks the Court to find an implied policy

5    from an ambiguity in the renewal.  (*Id.* at 22).  Defendant argues that Nevada law provides that

6    a court may review an insurer's actions at the time they were made to determine whether the

7    insurer's actions were reasonable as a matter of law and that bad faith cannot be premised

8    upon an honest mistake, bad judgment, or negligence.  (*Id.* at 25).  Defendant asserts that

9    Nevada law provides that an insurer cannot be found liable for bad faith, as a matter of law,

10   if it had a reasonable basis to contest coverage.  (*Id.*).  Defendant contends that if an insurer's

11   actions are reasonable the court can decide as a matter of law to dismiss the extra-contractual

12   claims.  (*Id.* at 26).  Defendant asserts that because Lewis admits that he did not make any

13   policy payments between June 12, 2007 and July 10, 2007 its actions were reasonable.  (*Id.*).

14   Defendant contends that even if it may be found to owe coverage on an implied contract,

15   Plaintiffs must admit that a genuine dispute existed as to coverage at the time of the accident.

16   (*Id.*).

17         Nalder filed a reply.  (Reply to Mot. for Summ. J. (#95)).

18         Nevada law imposes the covenant of good faith and fair dealing on insurers.  *Allstate*

19   *Ins. Co. v. Miller*, 212 P.3d 318, 324 (Nev. 2009).  A violation of the covenant gives rise to a

20   bad-faith tort claim.  *Id*.  The Nevada Supreme Court has defined "bad faith as 'an actual or

21   implied awareness of the absence of a reasonable basis for denying benefits of the [insurance]

22   policy.'" *Id*. (quoting *Am. Excess Ins. Co. v. MGM*, 729 P.2d 1352, 1354-55 (Nev. 1986).  "To

23   establish a prima facie case of bad-faith refusal to pay an insurance claim, the plaintiff must

24   establish that the insurer had no reasonable basis for disputing coverage, and that the insurer

25   knew or recklessly disregarded the fact that there was no reasonable basis for disputing

26   coverage." *Powers v. United Servs. Auto. Ass'n*, 962 P.2d 596, 604 (Nev. 1998) *opinion*

27   *modified on denial of reh'g*, 979 P.2d 1286 (Nev. 1999).

28         In this case, the Court denies Nalder's motion for summary judgment on the bad faith

1   claims.  The procedural history of this case demonstrates that Defendant had a reasonable

2   basis for disputing coverage during the time of the incident.  As demonstrated by Judge

3   Reed's original order, there was arguably sufficient evidence to find a basis for Defendant to

4   deny Lewis benefits of the insurance policy.  Even though the Ninth Circuit reversed and

5   remanded Judge Reed's original order, this Court finds that the procedural history of this case

6   demonstrates that Defendant had a reasonable basis to dispute coverage and, on one

7   occasion, had succeeded in that argument.  The Court denies Nalder's motion for summary

8   judgment on this issue.

9            **C.    Pre and Post-Judgment Interest**

10          Nalder argues that because there was arguable or possible coverage under the policy,

11   Defendant had a duty to defend Lewis.  (Mot. for Summ. J. (#88) at 20).  Nalder asserts that

12   Defendant's failure to provide coverage and its breach of the duty to defend was the proximate

13   cause of the default judgment being entered against Lewis.  (*Id.*).  Nalder contends that

14   Defendant has the duty to indemnify Lewis.  (*Id.*).

15          In response, Defendant argues that there are court cases where an insurer who

16   investigated coverage and based its decision not to defend on a reasonable construction of

17   the policy was not liable for bad faith breach of the duty to defend even after the court resolved

18   the ambiguity in the contract in favor of the insured.  (Opp'n to Mot. for Summ. J. (#90) at 33).

19          Nalder filed a reply.  (Reply to Mot. for Summ. J. (#95)).

20          The Nevada Supreme Court has held that primary liability insurance policies create a

21   hierarchy of duties between the insurer and the insured.  *Allstate Ins.*, 212 P.3d at 324.  One

22   of these contractual duties is the duty to defend.  *Id*.  A breach of the duty to defend is a

23   breach of a contractual obligation.  *See id.* at 324-25.  An insurer bears a duty to defend its

24   insured whenever it ascertains facts which give rise to the potential of liability under the policy.

25   *United Nat'l Ins. Co. v. Frontier Ins. Co., Inc.*, 99 P.3d 1153, 1158 (Nev. 2004).  Once the duty

26   to defend arises, it continues through the course of litigation.  *Id*.  "If there is any doubt about

27   whether the duty to defend arises, this doubt must be resolved in favor of the insured."  *Id*.

28   "The purpose behind construing the duty to defend so broadly is to prevent an insurer from

evading its obligation to provide a defense for an insured without at least investigating the facts behind a complaint." *Id*. However, the duty to defend is not absolute. *Id*. "A potential for coverage only exists when there is arguable or possible coverage." *Id*. "Determining whether an insurer owes a duty to defend is achieved by comparing the allegations of the complaint with the terms of the policy." *Id*. If an insurer breaches the duty to defend, damages are limited to attorneys' fees and costs incurred by the insured to defend the action. *See Home Sav. Ass'n v. Aetna Cas. & Sur. Co.*, 854 P.2d 851, 855 (Nev. 1993) (holding that an insured was not barred from further pursuing recovery from insurance company for fees and costs incurred in defending an action); *Reyburn Lawn & Landscape Designers, Inc. v. Plaster Dev. Co., Inc.*, 255 P.3d 268, 278 (Nev. 2011) (discussing damages related to an indemnitor's duty to defend an indemnitee).

In this case, as discussed at oral argument, the Court finds that Defendant breached its contractual duty to defend Gary Lewis in the underlying action. As such, Gary Lewis's damages are limited to the attorneys' fees and costs he incurred in defending that action. However, the Court awards no damages to Gary Lewis because he did not incur any fees or costs in defending the underlying action because he chose not to defend and, instead, took a default judgment.

As such, the Court grants in part and denies in part Nalder's motion for summary judgment. The Court grants summary judgment for Nalder on the ambiguity issue and finds that there is an ambiguity in the renewal statement and, thus, the policy is construed in favor of coverage at the time of the accident. Defendant must pay the policy limits of the implied insurance policy. The Court denies summary judgment for Nalder on the remaining bad-faith claims. The Court grants in part and denies in part summary judgment for Nalder on the duty to defend issue. The Court finds that Defendant did breach its contractual duty to defend but denies Nalder's request for damages for that breach.

## II. Defendant's Counter-Motion for Summary Judgment on All Extra-Contractual Claims or Remedies (#89)

Defendant seeks summary judgment on all of Plaintiff's claims for extra-contractual

remedies and/or bad faith claims because there was a genuine dispute as to whether coverage existed at the time and its actions were reasonable.  (Counter Mot. for Summ. J. (#89) at 15).  Defendant argues that because it had a reasonable basis to deny coverage there can be no bad faith.  (*Id.* at 16).

Nalder filed a response and Defendant filed a reply.  (Opp'n to Counter Mot. for Summ. J. (#96); Reply to Counter Mot. for Summ. J. (#97)).

The Court grants Defendant's counter-motion for summary judgment on Plaintiffs' extra-contractual claims and/or bad faith claims.  As discussed above, the procedural history of this case demonstrates that Defendant had a reasonable basis for disputing coverage during the time of the accident and, thus, there is no bad faith on the part of Defendant.

**CONCLUSION**

For the foregoing reasons, IT IS ORDERED that Plaintiff James Nalder's Motion for Summary Judgment (#88) is GRANTED in part and DENIED in part.  The Court grants summary judgment in favor of Nalder and finds that the insurance renewal statement contained an ambiguity and, thus, the statement is construed in favor of coverage during the time of the accident.  The Court denies summary judgment on Nalder's remaining bad-faith claims.

IT IS FURTHER ORDERED that Defendant's Counter-Motion for Summary Judgment on All Extra-Contractual Claims or Remedies (#89) is GRANTED. The Court grants summary judgment on all extra-contractual claims and/or bad faith claims in favor of Defendant.

The Court directs Defendant to pay Cheyanne Nalder the policy limits on Gary Lewis's implied insurance policy at the time of the accident.

The Clerk of the Court shall enter judgment accordingly.

Dated this 30th of October, 2013.

_____
United States District Judge

10