**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

JAMES NALDER, Guardian Ad Litem for minor Cheyanne Nalder, real party in interest, and GARY LEWIS, Individually,

    Plaintiffs,

vs.

UNITED AUTOMOBILE INSURANCE COMPANY, DOES I through V, and ROE CORPORATIONS I through V, inclusive,

    Defendants.

2:09-cv-1348-RCJ-GWF

**ORDER**

On October 30, 2013, the Court entered summary judgment in this case, which arises out of an automobile accident. Defendant has moved for attorney fees (ECF No. 104), and Plaintiffs have filed a countermotion, seeking attorney fees, costs, and prejudgment interest, (ECF No. 106). Defendant has also moved to strike an affidavit filed in support of Plaintiffs' motion, (ECF No. 108), and to strike Plaintiffs' subsequently filed errata, (ECF No. 127). For the reasons stated herein, the Court grants in part and denies in part Plaintiffs' motion. Defendant's motion for attorney fees is denied in the entirety, and the motions to strike are denied as moot.

**I.  Facts and Procedural History**

In July 2009, Defendant United Automobile Insurance Company ("Defendant" or "UAIC") filed a petition for removal based on diversity jurisdiction. (Pet. for Removal, ECF No. 1, at 1–2). Defendant attached Plaintiffs James Nalder, guardian ad litem for minor Cheyanne Nalder, real party in interest, and Gary Lewis's (collectively "Plaintiffs") complaint which had been filed in Nevada's Eighth Judicial District. (Compl., ECF No. 1, at 5–16).

The complaint alleged the following: Lewis was the owner of a 1996 Chevy Silverado and had an automobile insurance policy with Defendant on July 8, 2007. (*Id.* at 6). On July 8, 2007, Lewis drove over the top of Cheyanne while Cheyanne was a pedestrian in a residential area, causing Cheyanne serious personal injuries. (*Id*. at 7). Cheyanne made a claim to Defendant for damages and offered to settle the claim within the policy limits. (*Id*.). Defendant refused to settle and denied the claim, contending that Lewis did not have coverage at the time of the accident. (*Id*.). Defendant was required to provide insurance coverage under the policy. (*Id*. at 9). Defendant never informed Lewis that Cheyanne was willing to settle the claim for the sum of $15,000, the policy limit. (*Id*.). Due to the dilatory tactics and failure of Defendant to protect its insured, Cheyanne filed a complaint on October 9, 2007 against Lewis for her personal injuries and damages. (*Id*.). Cheyanne procured a default judgment in the amount of $3,500,000 against Lewis. (*Id*.). Plaintiffs alleged breach of contract, breach of the implied covenant of good faith and fair dealing, bad faith, breach of NRS 686A.310, and fraud against Defendant. (*Id*. at 9–14).

In March 2010, Defendant moved for summary judgment on all claims. (*See* Mot. Summ. J., ECF No. 17). In December 2010, Judge Reed issued an order granting Defendant's motion in the entirety. (Order, ECF No. 42, at 13). The order provided the following factual history:

> Lewis was the owner of a 1996 Chevy Silverado insured, at various times, by Defendant. Lewis had an insurance policy issued by UAIC on his vehicle during the period of May 31, 2007 to June 30, 2007. Lewis received a renewal statement, dated June 11, 2007, instructing him to remit payment by the due date of June 30, 2007 in order to renew his insurance policy. The renewal statement specified that "[t]o avoid lapse in coverage, payment must be received prior to expiration of your policy." The renewal statement listed June 30, 2007 as effective date, and July 31, 2007 as an "expiration date." The renewal statement also states that the "due date" of the payment is June 30, 2007, and repeats that the renewal amount is due no later than June 30, 2007. Lewis made a payment on July 10, 2007.
> Defendant then issued a renewal policy declaration and automobile insurance cards indicating that Lewis was covered under an insurance policy between July 10, 2007 to August 10, 2007.

(*Id.* at 2–3).[1]

The order then summarized the parties' respective positions: Defendant sought summary judgment on all claims on the basis that Lewis had no insurance coverage on the date of the accident. (*Id.*). Plaintiffs argued that Lewis was covered on the date of the accident because the renewal notice was ambiguous as to when payment had to be received in order to avoid a lapse in coverage and that any ambiguities had to be construed in favor of the insured. (*Id*. at 5–6). Defendants, in the alternative, requested that the Court dismiss Plaintiffs' extra-contractual claims or bifurcate the claim of breach of contract from the remaining claims. (*Id*. at 6).

Regarding Lewis's insurance coverage on July 8, 2007, the order stated the following:

> Plaintiffs contend that Lewis was covered under an insurance policy on July 8, 2007, the date of the accident, because Lewis' payment on July 10, 2007 was timely. Plaintiffs rely on the sentence "[t]o avoid lapse in coverage, payment must be received prior to expiration of your policy" contained in the renewal statement. Defendant contends that "expiration of your policy" did not refer to the expiration date of the renewal policy listed on the renewal statement, but to the expiration of Lewis' current policy, which coincided with the listed due date on the renewal statement. Plaintiffs contend that Lewis reasonably believed that while there was a due date on which UAIC preferred to receive payment, there was also a grace period within which Lewis could pay and avoid any lapse in coverage.
> 
> The renewal statement cannot be considered without considering the entirety of the contract between Lewis and UAIC. Plaintiff[s] attached exhibits of renewal statements, policy declarations pages, and Nevada automobile insurance cards issued by UAIC for Lewis. The contract, taken as a whole, cannot reasonably be interpreted in favor of Plaintiffs' argument.
> 
> Lewis received a "Renewal Policy Declarations" stating that he had coverage from May 31, 2007 to June 30, 2007 at 12:01 A.M. (Pls' Opp., Exhibit A at 29 (#20-1); Pls' Supp., Exhibit A at 11-12 (#26-1); Pls' Supp., Exhibit A at 15 (#26-1).) The declarations page stated that "[t]his declaration page with 'policy provisions' and all other applicable endorsements complete your policy." (Pls' Opp., Exhibit A at 29 (#20-1).) Lewis also received a Nevada Automobile Insurance Card issued by UAIC stating that the effective date of his policy was May 31, 2007, and the expiration date was June 30, 2007. (*Id*. at 30; Pls' Supp.,

---

[1] Record citations omitted.

> Exhibit A at 11-12 (#26-1).) The renewal statement Lewis received in June must be read in light of the rest of the insurance policy, contained in the declarations page and also summarized in the insurance card.
>
> "In interpreting a contract, 'the court shall effectuate the intent of the parties, which may be determined in light of the surrounding circumstances if not clear from the contract itself.'" *Anvui, LLC v. G.L. Dragon, LLC*, 163 P.3d 405, 407 (Nev. 2007). Plaintiffs contend that there was a course of dealing between Lewis and UAIC supporting a reasonable understanding that there was a grace period involved in paying the insurance premium for each month-long policy. In fact, the so-called course of dealing tilts, if at all, in favor of Defendant. Lewis habitually made payments that were late. UAIC never retroactively covered Lewis on such occasions. Lewis' new policy, clearly denoted on the declarations page and insurance cards Lewis was issued, would always become effective on the date of the payment.
>
> Plaintiffs point to the fact that in April 2007, Lewis was issued a revised renewal statement stating that the renewal amount was due on May 6, 2007, a date after the effective date of the policy Lewis would be renewing through the renewal amount. This isolated occasion occurred due to the fact that Lewis added a driver to his insurance policy, resulting in an increase in the renewal amount, after UAIC had previously sent a renewal notice indicating that a lower renewal amount was due on April 29, 2007. UAIC issued a revised renewal statement dated April 26, 2007, and gave Lewis an opportunity to pay by May 6, 2007, instead of April 29, 2007, when the original renewal amount had been due upon expiration of his April policy. In that case, Lewis made a timely payment on April 28, 2007, and therefore there is not a single incident Plaintiffs can point to in which Lewis was retroactively covered for a policy before payment was made, even in the single instance UAIC granted him such an opportunity due to a unique set of circumstances.

(*Id*. at 7–9).

Plaintiffs appealed. (Notice of Appeal., ECF No. 46). In a two-page memorandum disposition, the Ninth Circuit held, *inter alia*, the following:

> We reverse the district court's grant of United Automobile Insurance Company's motion for summary judgment with respect to whether there was coverage by virtue of the way the renewal statement was worded. Plaintiffs came forward with facts supporting their tenable legal position that a reasonable person could have interpreted the renewal statement to mean that Lewis's premium was due by June 30, 2007, but that the policy would not lapse if his premium were "received prior to expiration of [his] policy," with the "expiration date" specifically stated to be July 31, 2007. We remand to the district court for trial or other proceedings consistent with this memorandum. The portion of the order granting summary judgment with respect to the statutory arguments is affirmed.

(Ninth Cir. Mem. Dispo., ECF No. 82, at 2–3).

The parties then filed cross-motions for summary judgment. (Pls.' Mot. Summ. J., ECF No. 88; Def.'s Mot. Summ. J., ECF No. 89). In an order dated October 30, 2013, this Court granted in part and denied in part Plaintiffs' motion. (ECF No. 102). Specifically, the Court granted summary judgment as to the existence of coverage, finding that the insurance renewal statement contained an ambiguity that must construed in favor of coverage during the time of the accident. (*Id.* at 10.). The Court denied Plaintiffs' motion as to the remaining bad faith claims and granted Defendant's countermotion as to all of the extra-contractual claims. (*Id.*). The Court then directed Defendant to pay Nalder the policy limits and ordered the case closed. (*Id.*).

Shortly thereafter, the parties filed the pending cross-motions for attorney fees and costs. ( ECF No. 104; ECF No. 106). Defendant has also moved to strike the affidavit submitted in support of Plaintiffs' motion. (ECF No. 108). The Court heard oral argument on February 13, 2014 and now considers the pending motions.

## II.   Jurisdiction

Although Plaintiffs have filed a notice of appeal from this Court's October 30, 2013 order on the motions for summary judgment, (ECF No. 112), the Court retains jurisdiction to hear the pending motions for attorney fees. In *Masalosalo by Masalosalo v. Stonewall Ins. Co.*, the Court of Appeals for the Ninth Circuit held that an appeal from the merits does not foreclose an award of attorney fees by the district court. 718 F.2d 955, 956 (9th Cir. 1983). Allowing the district court retain jurisdiction to consider a motion for attorney fees "will prevent hasty consideration of postjudgment fee motions" and "will prevent postponement of fee consideration until after the circuit court mandate, when the relevant circumstances will no longer be fresh in the mind of the district judge." *Id.* The Ninth Circuit also noted that if the district court rules on the fees motion,

the losing party may file an appeal from the district court's order on the motion for attorney fees and have that appeal consolidated with the appeal on the merits. *Id.* Accordingly, the Court has jurisdiction over the pending motions.

### III.   Plaintiffs' Motion for Attorney Fees and Costs (ECF No. 106)

Plaintiffs have moved for prejudgment interest, costs, and an award of attorney fees. (ECF No. 106). Upon initial review, the Court found the motion substantively and procedurally deficient in numerous respects. However, as explained at the hearing held on February 13, 2014, the Court was, and remains, inclined to grant a reasonable award of conservative fees and costs upon the filing of a properly supported motion. (Hr'g, Feb. 13, 2014, Las Vegas Courtroom 4B, at 10:09:20 a.m.). Specifically, the Court suggested that Plaintiffs could supplement their original filings with the required, additional proofs. (*Id.* at 10:04 a.m., 10:07 a.m.). In response, Plaintiffs have filed an "errata" to the original motion for fees and costs. (Errata, ECF No. 126). Plaintiffs have also filed an amended bill of costs. (ECF No. 125).

Defendant complains that, during the hearing, the Court did not expressly grant leave to file these supplemental materials but instead took the matter under advisement and indicated that a written order would issue. (Mot. Strike Errata, ECF No. 127, at 4–5). To clarify whatever confusion this may have created, the Court now grants retroactive leave to file both the errata, (ECF No. 126), and the amended bill of costs (ECF No. 125). Defendant's motion to strike these filings, (ECF No. 127), is denied as moot. To the extent that Defendant argues that it should be given a "meaningful chance to brief the substance of the new materials and arguments," (Mot. Strike, ECF No. 127, at 5), the Court also grants retroactive leave to file the responsive briefs docketed on April 7, 2014, (*see* Objection to Am. Bill of Costs, ECF No. 128; Opp'n to Errata,

ECF No. 129), which the Court now considers in conjunction with Plaintiffs' supplemental filings.

A. **Prejudgment Interest**

Plaintiffs contend that they are entitled to prejudgment interest in the amount of $3,378.24. (Pls.' Mot. Att'y Fees, ECF No. 106, at 5). Defendant agrees. (Opp'n, ECF No. 109, at 3 n.1). The amount requested appears to be correctly calculated. Therefore, Plaintiffs' motion is granted as to the award of prejudgment interest in the amount of $3,378.24.

B. **Costs**

Plaintiffs have filed an amended bill of costs and now seek an award of taxable costs in the amount of $7,492.77. (ECF No. 125). They also seek an award of "other costs and nontaxable related expenses," as part of the award of attorney fees, in the amount of $14,056.25, (Errata, ECF No. 126, at 5, 16–42), for a total of $21,549.02 in claimed costs. While the Court is inclined to grant an award of permissible costs, the Court finds that only a fraction of the amount presently claimed is justified by both the instant record and existing law. Specifically, the Court finds that Plaintiffs are entitled to a total award of costs in the amount of $8,028.40.

Under Federal Rule 54(d)(1), costs should be awarded to the prevailing party. Such costs, however, must be reasonable and permissible under the applicable rules. Local Rule 54-1(b) requires that "documentation of requested costs in all categories *must* be attached to the bill of costs." (emphasis added). As Defendant notes in its objections, Plaintiffs have failed to provide the required documentation in support of several of their alleged costs. For example, in the amended bill of costs, Plaintiffs request $6,667.29 in costs for their deposition transcript fees. (ECF No. 125, at 1). However, the documentation submitted to substantiate such costs supports

only an award of $6259.89. Therefore, under Local Rule 54-1(b), the remaining $407.40 in deposition transcript fees must be denied.

The Court also denies Plaintiffs requests for "Costs of Appeal," in the amount of $5,405.30; "Expert Costs," in the amount of $6,322.18; "Deposition Expenses (other than transcripts)," in the amount of $1,078.24; and "Investigation Costs," in the amount of $307.50, (*See* Errata, ECF No. 126, at 17). Stated simply, Plaintiffs have failed to cite any authority permitting the award of such costs. (*See generally id.*).

Regarding Plaintiffs' prayer for "Costs of Appeal," Local Rule 54-15 states that the "District Court does not tax or retax appellate costs." Instead, such costs, if allowable, must be granted by the Ninth Circuit and included in the applicable mandate. In the instant case, Plaintiffs were not awarded such costs by the Ninth Circuit. (*See* Mandate, ECF No. 82, at 3). Therefore, Plaintiffs cannot now claim such costs in this Court.[2]

Likewise, with respect to the unexplained "Insurance Expert Fees," Plaintiffs appear to seek costs for consultation and preparation of an expert report. Indeed, Plaintiffs' insurance expert, Charles Miller, was never deposed, and therefore, Plaintiffs cannot claim any "witness fees" under Local Rule 54-4. However, consultation and report fees are not listed as taxable costs under 28 U.S.C. §1920, and Plaintiffs have failed to argue that the taxation of such costs is permitted by another authority. Therefore, without additional argument, the prayer for "Insurance Expert Fees" appears improper. *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 445

---

[2] Plaintiffs requested appellate costs in their original motion, (ECF No. 106, at 15), and during the February 13, 2014 hearing, the Court explained this rule and that such costs are unavailable in this case. (Hr'g, Feb. 13, 2014, Las Vegas Courtroom 4B, at 10:05 a.m.). In response, Plaintiffs' counsel assured the Court that it would not request appellate costs in the supplemental filings. (*Id.* at 10:05:15). Nonetheless, Plaintiffs have once again moved for such costs, requesting them in the instant errata instead of the amended bill of costs. (*See* Errata, ECF No. 126, at 17).

(1987) ("Absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920.").

Plaintiffs' prayers for "Deposition Expenses (Other than transcripts)" and "Investigation Costs" are likewise unexplained, unsubstantiated, and not contemplated by any cited rule. Accordingly, an award of such costs would be inappropriate. Therefore, by subtracting the denied costs from the total claimed amount of $21,549.02, and finding the remaining costs permissible, the Court concludes that Plaintiffs are entitled to an award of costs in the amount of $8,028.40.

**C. Attorney Fees**

After obtaining a $15,000 judgment in this case, Plaintiffs now seek an award of attorney fees in the amount of $128,259.00. (Errata, ECF No. 126, at 5). While the Court is inclined to exercise its discretion under NRS 18.010(2)(a) to grant a reasonable award of conservative fees, the amount presently requested is plainly excessive. Accordingly, and for the reasons stated below, the Court grants Plaintiffs an award of attorney fees in the reduced amount of $72,546.18.

The parties agree that in a diversity action, such as this, state law governs the award of attorney fees. *See Shakey's Inc. v. Covalt*, 704 F.2d 426, 435 (9th Cir. 1983). NRS 18.010(2)(a) provides that the court may make an allowance of attorney fees to a prevailing party who has not recovered more than $20,000. The making of such an award is discretionary. *Schulz v. Lamb*, 591 F.2d 1268, 1272 (9th Cir. 1978).

Local Rule 54-16(b) provides that motions for attorney fees *must* include a reasonable itemization and description of the work performed, an itemization of all costs sought to be

charged as part of the fee award and not otherwise taxable, and a brief summary of twelve factors:

> (1) the results obtained and the amount involved;
> (2) the time and labor required;
> (3) the novelty and difficulty of the questions involved;
> (4) the skill requisite to perform the legal service properly;
> (5) the preclusion of other employment by the attorney due to acceptance of the case;
> (6) the customary fee;
> (7) whether the fee is fixed or contingent;
> (8) the time limitations imposed by the client or the circumstances;
> (9) the experience, reputation, and ability of the attorney(s);
> (10) the undesirability of the case, if any;
> (11) the nature and length of the professional relationship with the client; and
> (12) awards in similar cases.

(emphasis added). The motion must also be accompanied by an attorney affidavit authenticating the information and attesting that the fees and costs sought are reasonable. LR 54-16(c). The "failure to provide the information required by Local Rule 54-16(b) and (c) in a motion for attorneys' fees constitutes a consent to the denial of the motion." LR 54-16(d). In this case, the Court finds that Plaintiffs' supplemental filings satisfy each of Local Rule 54-16's procedural requirements.

Once a party establishes its entitlement to attorney fees, the court must determine the reasonableness of such an award. *In re USA Commercial Mortgage Co.*, No. 2:07-CV-892-RCJ-GWF, 2013 WL 3944184, at *18 (D. Nev. July 30, 2013). This requires the court to perform the "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *See Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). First, the court multiplies "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate" to reach the so-called "lodestar figure." *Hensley*, 461 U.S. at 433. After making that computation, the court then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the

basis of the *Kerr* factors[3] that are not already subsumed in the initial lodestar calculation.[4] *See Fischer*, 214 F.3d at 1119 (citation omitted). Only in "rare and exceptional cases" should a court adjust the lodestar figure. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (internal quotation marks omitted); *Fischer*, 214 F.3d at 1119 n.4 ("A strong presumption exists that the lodestar figure represents a reasonable fee, and therefore, it should only be enhanced or reduced in rare and exceptional cases.") (internal quotation marks omitted).

1. **Reasonable Hourly Rate**

Courts consider the experience, skill, and reputation of the attorney requesting fees when determining the reasonableness of an hourly rate. *Webb v. Ada County*, 285 F.3d 829, 840 & n.6 (9th Cir. 2002). A reasonable hourly rate should reflect the prevailing market rates of attorneys practicing in the forum community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *See id.; see also Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984). To inform and assist the court in the exercise of its discretion, "[t]he party seeking an award of fees should submit evidence supporting the . . . rates claimed." *Hensley*, 461 U.S. at

---

[3] The twelve *Kerr* factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

[4] Factors one through five are subsumed in the lodestar calculation. *See Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996). Further, the sixth factor, whether the fee is fixed or contingent, *may not* be considered in the lodestar calculation. *See Davis v. City & Cnty. of S.F.*, 976 F.2d 1536, 1549 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993).

433; *see also Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987). Rates evidenced through affidavits are normally deemed to be reasonable. *Blum*, 465 U.S. 895–96 n.11.

Here, Plaintiffs claim hourly rates of $600 for Attorney Thomas Christensen; $450 for Attorneys David Sampson, Dawn Hooker, and Matthew Minnuci; $300 for Attorney Cara Xidis; $150 for Attorneys Jennifer M. Gooss, Jason A. Gordon, and Derek Muaina. (Estimate of Billable Hours, ECF No. 126, at 14). Plaintiffs also claim hourly rates for support staff in amounts ranging from $50 to $150. (*Id.*). Based on these figures, Plaintiffs claim "an average hourly rate of $272.73." (Estimate of Billable Hours, ECF No. 126, at 14).

In other cases involving similar issues and similarly skilled attorneys, courts balancing the relevant factors have found similar rates to be reasonable. *See, e.g.*, *Tracey v. Am. Family Mut. Ins. Co.*, No. 2:09-CV-1257-GMN-PAL, 2010 WL 5477751 (D. Nev. Dec. 30, 2010) (finding an award of $250 per hour to be a reasonable rate in a case involving similar claims that was litigated to trial by then-attorney Jerry A. Wiese II, who is now a sitting Nevada State Court Judge). This Court agrees with those results. Therefore, the Court finds that the claimed average hourly rate of $272.73 is reasonable in this case.

**2. Hours Reasonably Expended**

In addition to evidence supporting the rates claimed, "[t]he party seeking an award of fees should submit evidence supporting the hours worked." *Hensley*, 461 U.S. at 433; *see also Jordan*, 815 F.2d at 1263. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. "The district court also should exclude from this initial fee calculation hours that were *not reasonably expended*." *Hensley*, 461 U.S. at 433–34 (emphasis added) (internal quotation marks omitted). "In other words, the court has discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been

spent on the case." *Plaza Bank v. Alan Green Family Trust*, No. 2:11-CV-00130-MMD, 2013 WL 1759580, at *2 (D. Nev. Apr. 24, 2013) (quoting *Edwards v. Nat'l Business Factors, Inc.*, 897 F. Supp. 458, 460 (D. Nev. 1995)); *see also Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) ("The district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application.").

The Ninth Circuit accords "considerable deference to the district court's findings regarding whether hours claimed by prevailing counsel are excessive, redundant or otherwise unnecessary." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1047 (9th Cir. 2000) (citing *McGrath v. County of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995)). This is due to "the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Hensley*, 461 U.S. at 437. The district court need only provide a "concise but clear explanation of its reasons" for reducing the number of hours included in the fee award, *id.*, and it need not engage in a line-by-line examination of the hourly charges:

> We emphasize, as we have before, that the determination of fees "should not result in a second major litigation." The fee applicant . . . must, of course, submit appropriate documentation to meet "the burden of establishing entitlement to an award." But trial courts need not, and indeed should not, become green-eyeshade accountants. *The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time*. And appellate courts must give substantial deference to these determinations, in light of "the district court's superior understanding of the litigation." *We can hardly think of a sphere of judicial decision making in which appellate micromanagement has less to recommend it.*

*Fox v. Vice*, 131 S.Ct. 2205, 2216 (2011) (Kagan, J.) (emphasis added) (internal citations omitted).

The time records submitted in support of Plaintiffs' errata indicate that counsel spent a total of 379.79 hours litigating this case. (*See* Estimate of Billable Hours, ECF No. 126, at 14). As Plaintiffs concede, these records are only *estimates* of the billable hours that *could* have been charged in the absence of the contingency-fee agreement. (*See id.* at 8–14). Nonetheless, they reveal that the time claimed for various tasks is a bit excessive. For example, in a single record entry, one attorney billed twenty-four consecutive hours to prepare for and attend two depositions in Scottsdale, AZ. (*See id.* at 10). The Court finds it unlikely that attending these depositions reasonably required twenty-four hours of billable time. Moreover, at the attorney's claimed hourly rate of $450.00, Plaintiffs now seek, by their own admission, an award of $10,800 in fees for these tasks alone. (*Id.*). This is excessive. In a similar entry, Plaintiffs estimate that it took the same attorney sixteen hours to prepare for and attend a deposition in Phoenix, AZ. (*Id.*). Assuming that this deposition was subject to the presumed seven-hour limit, *see* Fed. R. Civ. P. 30(d)(1), and that it lasted the full seven hours, this entry suggests that counsel estimates spending nine hours to prepare to attend it. Again, this seems excessive. The Court is likewise skeptical of the estimated forty hours that counsel spent "finish[ing] and fil[ing]" Plaintiffs' opening brief to the Ninth Circuit, (*id.* at 12), and Plaintiffs' estimates include other similar examples, (*see id.* at 8–14).

In sum, the Court must conclude that Plaintiffs' counsel could have reasonably prosecuted this case to the $15,000 judgment eventually obtained using 70% of the time presently alleged. Accordingly, the Court will reduce the number of hours presently claimed by 30%, for a rounded total of 266. Multiplying that number by the reasonable hourly rate of $272.73, the Court concludes that the lodestar amount in this case is $72,546.18. Neither party has argued for a *Kerr*-factor adjustment, and the Court finds no reason to make one. Therefore,

exercising its discretion to award fees under NRS 18.010(2)(a), and its broad discretion to do "rough justice" in cutting the hours claimed, *Fox*, 131 S.Ct. at 2216, the Court grants Plaintiffs an award of reasonable attorney fees in the amount of $72,546.18.

**IV.     Defendant's Motions to Strike (ECF Nos. 108 and 127)**

Based on the forgoing, the motion to strike the affidavit of Jason A. Gordon in support of Plaintiffs' motion for fees and costs, (ECF No. 108), and the motion to strike Plaintiffs' errata, (ECF No. 127), are denied as moot.

**V.     Defendant's Motion for Attorney Fees (ECF No. 104)**

Defendant's countermotion for fees seeks an award of fees in the amount of $6,996.00, and is based on a rejected $15,001 offer of judgment extended prior to the court's entry of the $15,000 judgment. (*See Generally* ECF No. 104). It appears that Defendant does not seek an award of costs. (*Id.*).

**A.  Legal Standards**

Under Federal Rule of Civil Procedure 68, a party defending a claim may serve on an opposing party, at least 14 days before a date set for trial, an offer to allow judgment on specified terms, with the costs then accrued. Fed. R. Civ. P. 68(a). If the offeree rejects the offer and the "judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d). Nevada has a similar "offer of judgment" rule, but the Nevada version allows for an award of attorney fees. NRS §17.115(4)(d)(3).

In diversity cases, the court applies federal law if the law is procedural and state law if the law is substantive. *Walsh v. Kelly*, 203 F.R.D. 597, 598 (D. Nev. 2001) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). If the two rules conflict, the federal rule applies if it is

"sufficiently broad to control an issue." *Id.* (citing *Hanna v. Plumer*, 380 U.S. 460, 471–72 (1965)). "Statutes allowing for recovery of attorney's fees are considered substantive for *Erie* purposes" and "will be applied in diversity cases unless they conflict with a valid federal statute or procedural rule." *Id.*

In *Walsh*, as here, a plaintiff received a judgment which was less than the offer of judgment made by the defendants. *Id.* at 599. This required the court to decide whether NRS 17.115, which provides for both costs and attorney fees, conflicted with Rule 68, which provides only for costs. *Id.* at 600. The court determined that Rule 68 was sufficiently broad to cover the point in dispute—offer of judgment rules—and found that an award of attorney fees under NRS 17.115 would conflict with Rule 68. *Id.* Consequently, the court concluded that Rule 68 applied and that defendants could not recover attorney fees based on their rejected offer of judgment. *Id.* at 601.

However, as a subtle nuance, while Rule 68 provides only for "costs" by its text, the Supreme Court has interpreted it to include all costs properly awardable under the relevant substantive rule, including attorney fees where included in the authoritative definition of "costs." *Marek v. Chesny*, 473 U.S. 1, 9 (1985)("[T]he most reasonable inference is that the term 'costs' in Rule 68 was intended to refer to all costs properly awardable under the relevant substantive statute or other authority. In other words, all costs properly awardable in an action are to be considered within the scope of Rule 68 'costs.'").

**B. Analysis**

The parties agree that Rule 68 governs Defendant's motion. Defendant, however, asserts that it is entitled to fees under *Marek*. The Court disagrees, finding that Defendant has failed to demonstrate that its fees are recoverable as a cost of litigation under "an agreement, statute, or

rule," as required by Nevada law. The Court likewise rejects Defendant's alternative claim for fees under NRS 18.010(b), finding that Defendant has failed to establish that sanctions are appropriate in this case.

Defendant first cites to two Nevada Supreme Court cases examining damage-based fee awards, contending that such cases constitute "other authority" for purposes of the *Marek* analysis. Specifically, Defendant claims that Plaintiff Nalder maintained its claims without a valid assignment for the first nine months this case was pending, and that under Nevada case law this was improper such that an award of fees, in the form of damages, is appropriate. (*See* Def.'s Mot. Att'y Fees, ECF No. 104, at 6–7 (citing *Artistic Hairdressers, Inc. v. Levy*, 486 P.2d 482, 484 (Nev. 1971); *City of Las Vegas v. Cragin Indus., Inc.*, 478 P.2d 585, 590 (Nev. 1970))). This argument is defective for several reasons.

First, an award of fees under *Marek* requires Defendant to set forth legal authority permitting an award of attorney fees as "costs" of litigation; an award of damages is an entirely separate issue. Indeed, were Defendant entitled to attorney fees as damages, the present analysis would be unnecessary. In *Shuette v. Beazer Homes Holdings Corp.*, the Nevada Supreme Court explained the distinction:

> In *Sandy Valley Associates v. Sky Ranch Estates*, after pointing out that attorney fees as 'a cost of litigation' are recoverable only under an agreement, statute, or rule, we stated that 'if the fees are so authorized, the trial court examines the reasonableness of the fees requested and the amount of any award.' Ordinarily, we noted, the court's determination is based on the documentary evidence submitted to it in a post-judgment motion. Then, we distinguished litigation cost attorney fees from those fees requested as an element of damages, which constitute a rather narrow exception to the rule prohibiting attorney fees awards absent express authorization, and consequently must be specially pleaded and proved 'just as any other element of damages.'

124 P.3d 530, 547 (Nev. 2005) (internal citations and footnotes omitted) (quoting *Sandy Valley Associates v. Sky Ranch Estates Owners Ass'n*, 35 P.3d 964 (Nev. 2001). In the instant case

Defendant has neither plead nor proved its fees as an element of damages, and therefore an award of such damages is plainly inappropriate. Defendant has also failed to set forth any "agreement, statute, or rule" establishing that its fees are recoverable as "a cost of litigation." *See id.* Accordingly, an award of fees under Rule 68 is inappropriate.

Defendant's reliance on NRS 18.010(b) as an alternative basis for fees is likewise unpersuasive. NRS 18.010(b) provides for an award of attorney fees "[w]ithout regard to the recovery sought, when the court finds that the claim, counterclaim, cross-claim or third-party complaint or defense of the opposing party was brought or maintained *without reasonable ground or to harass the prevailing party*." (emphasis added). As Defendant correctly notes, the standard for determining whether a party maintained a claim or defense, without reasonable ground is the same as it would be for assessing sanctions pursuant to Federal Rule 11. *See Bergmann v. Boyce*, 856 P.2d 560 (Nev. 1993). In *Bergman,* the court compared NRS 18.010(2)(b) to sanctions under Rule 11, stating "[t]he trial court must examine the actual circumstances surrounding the case to determine whether the suspect claims were brought without reasonable grounds." *Id.* A claim or defense "is frivolous or groundless if there is no credible evidence to support it." *Rodriguez v. Primadonna Co., LLC*, 216 P.3d 793, 800 (Nev. 2009).

Defendant contends that because Nalder lacked a valid assignment at the outset of this action, Plaintiffs brought the case without reasonable grounds such that sanctions, in the form of attorney fees, are appropriate. The Court disagrees.

While Defendant may be correct in its assertion that Nalder lacked standing to prosecute this case at its commencement, Nalder was not the only Plaintiff at that time. Indeed, Lewis was a named Plaintiff at the inception of this case, and he clearly had standing to prosecute it.

18

Moreover, as Defendant admits, Lewis eventually assigned the claim to Nalder. (ECF No. 104, at 10). Accordingly, while Nalder's claims may not have survived a motion to dismiss at the outset of this case, the Court cannot conclude, from these facts alone, that Plaintiffs maintained this action, taken as a whole, in which they obtained a $15,000 judgment, in bad faith or without reasonable grounds. In fact, there is nothing in the record that would support such a conclusion. Moreover, Plaintiffs have raised serious questions, which the Court need not reach at this time, with respect to whether Defendant can be deemed a "prevailing party" for purposes of an award under NRS 18.010(b). Therefore, Defendant's motion for attorney fees is denied.

## CONCLUSION

IT IS HEREBY ORDERED that Plaintiffs' motion for attorney fees and costs (ECF No. 106) is GRANTED IN PART and DENIED IN PART. Plaintiffs are hereby awarded prejudgment interest in the amount of $3,378.24, costs in the amount of $8,028.40, and attorney fees in the amount of $72,546.18.

IT IS FURTHER ORDERED that Defendant's motion for attorney fees (ECF No. 104) is DENIED in the entirety.

IT IS FURTHER ORDERED that Defendant's motions to strike (ECF Nos. 108 and 127) are DENIED as moot.

IT IS SO ORDERED.

Dated this 3rd day of June, 2014.

_____
ROBERT C. JONES
United States District Judge